UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
AKF, INC. d/b/a FUNDKITE,                         :
                                                  :
                              Plaintiff,     :     **REPORT AND**
                                                  :     **RECOMMENDATION**
                -against-            :
                                                  :     19-CV-06994 (FB) (PK)
CREATIVE FIBERGLASS, LLC, A                       :
SHOWROOM SHINE DETAILING SHOP LLC,:
and ROBERT ALAN COLOMBO, SR.,                     :
                                                  :
                         Defendants.    :
                                                  :
------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff AKF, Inc. d/b/a Fundkite (hereinafter, "Plaintiff" or "Fundkite"), brought this action against Creative Fiberglass, LLC ("Creative Fiberglass"), A Showroom Shine Detailing Shop LLC ("Showroom"), and Robert Alan Colombo, Sr. ("Colombo" and collectively, "Defendants"), alleging breaches of a revenue purchase agreement. (*See* Compl., Dkt. 12.)

Before the Court on referral from the Honorable Frederic Block is Plaintiff's Second Motion for Default Judgment ("Motion," Dkt. 55), seeking a default judgment against Creative Fiberglass and Colombo. For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted and damages awarded as detailed below.

## BACKGROUND

### I.    Factual Background

On August 28, 2019, Plaintiff and Defendant Creative Fiberglass entered into a revenue purchase agreement ("RPA") whereby Plaintiff agreed to purchase rights to $216,000.00 of Creative Fiberglass's future receivables for a payment of $150,000.00, "representing the agreed-upon present-day value of those future receivables." (Compl. ¶ 9; Inquest Transcript, dated Apr. 22, 2021 ("Tr.")

1

at 11:5-13; "RPA," Inquest Ex. 1, Dkt. 62-1 at 4.) Colombo signed the RPA on behalf of Creative Fiberglass, and Aleksander Shvarts ("Shvarts"), the CEO of Fundkite, entered into the RPA on behalf of Plaintiff. (Tr. at 7:17-18, 8:13-9:12; RPA at 5.)

Pursuant to the RPA, Creative Fiberglass agreed (1) "to make payments towards the future receivables amount of $216,000.00 by allowing Fundkite to make daily ACH withdrawals of [Creative Fiberglass]'s receivables from a dedicated [Creative Fiberglass] bank account (the "Account") until the purchased receivables amount is fully paid to Fundkite"; (2) not to block Fundkite's access to daily withdrawals from Creative Fiberglass's account and that "any such block by [Creative Fiberglass] would constitute a default under the RPA"; and (3) not to enter into "subsequent agreements to sell its receivables, and that doing so would constitute a default under the RPA." (Compl. ¶¶ 10, 11, 12.)

Section III of the RPA contains provisions for remedies if there is an event of default, including a breach of the contract. Section 3.2 "Remedies" provides that "the full uncollected Purchased Amount of Receipts plus all fees and charges (including legal fees) due under this Agreement will become due and payable in full immediately." (Compl. ¶ 13; RPA at 9.) Section 3.3 "Costs" states that Creative Fiberglass "shall pay to [Fundkite] all reasonable costs associated with (a) any Event of Default, and (b) the enforcement of [Fundkite's] remedies, including but not limited to court costs and attorneys' fees." (*Id.*) In addition, "Appendix A: The Fee Structure" contains the following provision: "F. **Default Fee** - In case of default [Creative Fiberglass] would be responsible for the attorney fees in the amount of 30% of the total amount of Purchased Receipts. The Default Fee is due when an Event of Default occurs." (RPA at 12; Tr. at 13:20-14:1.)

Defendants Showroom and Colombo signed a Guaranty, agreeing to guarantee Creative Fiberglass's performance under the RPA, including payment for "any and all amounts owed to Fundkite resulting from [Creative Fiberglass]'s breach of its RPA obligations." (Compl. ¶ 14, RPA at 13-16.)

On August 30, 2019, Plaintiff remitted the full purchase price of the future receivables to Creative Fiberglass, excluding certain agreed upon underwriting and initial fees. (Compl. ¶ 15; *see* RPA at 4, 12.)

On December 6, 2019, December 9, 2019, and December 10, 2019,[1] Creative Fiberglass blocked Plaintiff from accessing the Account, thereby preventing Plaintiff from making the agreed upon ACH withdrawals from the Account. (Tr. at 17:5-16; Inquest Ex. 2, Dkt. 63 at 4 (page numbers are references to ECF pagination).) Creative Fiberglass also "entered into subsequent agreements to sell its revenues." (Compl. ¶ 18.)

In total, Plaintiff received $119,630.77 from Creative Fiberglass pursuant to the RPA and did not receive the balance of $96,369.23. (Tr. at 16:21-17:4; Ex. 2 at 4.) Defendants Showroom and Colombo did not make any of the payments that they were obligated to make under their guarantees. (Compl. ¶¶ 21-22.)

## II.     Procedural Background

Plaintiffs filed the original complaint on December 13, 2019 (Dkt. 1), which was replaced on January 2, 2020, with a corrected complaint in which the spelling of Defendant Colombo's name was corrected (Compl.). In the Complaint, Plaintiff alleges (1) breach of the RPA against Defendant Creative Fiberglass; (2) breach of guarantee against Defendants Creative Fiberglass and Showroom; (3) unjust enrichment against all Defendants; and (4) money had and received by all Defendants. (*See* Compl.)

Defendants were served on January 20, 2020. (Dkt. 20, 22, 23.) Plaintiff requested certificates of default on March 10, 2020 for Colombo (Dkt. 24), Creative Fiberglass (Dkt. 25), and Showroom (Dkt. 26) and moved for default judgment on March 17, 2020 (Dkt. 30). The Clerk's Office entered

---

[1] Although the Complaint alleges that Plaintiff was blocked from accessing the Account "[o]n or about December 12, 2019" (Compl. ¶ 16), a payment transaction ledger entered at Exhibit 2 during the inquest shows Plaintiff was unable to withdraw from the Account on these three dates. (Dkt. 63 at 4.)

3

default judgments against Defendants on March 18, 2020 (Dkt. 32), which were vacated on April 2, 2020 so the Court could determine whether service of the summons and complaint was proper.

A conference was held on September 2, 2020 at which the process server testified. The Court found that service of process was properly effectuated on Defendant Colombo on behalf of himself and Defendant Creative Fiberglass. (Dkt. 46.) However, the Court found that "the record does not similarly demonstrate service on Defendant A Showroom Shine Detailing Shop LLC because that entity was dissolved before the start of this lawsuit." (*Id.*)

Another conference was held on October 2, 2020, at which Defendant Colombo stated that he "lacks the resources" to defend himself or Creative Fiberglass and therefore would not respond to the Complaint. (Dkt. 48.) Plaintiff was granted leave to move for default judgment against Colombo and Creative Fiberglass. On October 7, 2020, Plaintiff requested certificates of default from the Clerk of the Court (Dkts. 51, 52), which were issued on October 13, 2020 (Dkts. 53, 54). That same day, Plaintiff filed the Motion, seeking a default judgment only on its breach of contract claims against Creative Fiberglass and Colombo. (Dkt. 55.)

The undersigned held an inquest by videoconferencing on April 22, 2021, at which Shvarts testified and introduced a summary of Fundkite's account with Creative Fiberglass, showing that Fundkite made a payment of the "purchase amount" to Creative Fiberglass on August 30, 2019, minus "upfront fees" of $6,185.00, with a net funding wire amount of $143,815.00. (Tr. at 14:3-16:17; Ex. 2 at 4.) He also testified that Fundkite was only able to access the Account from September 3, 2019 to December 5, 2019 and withdraw $119,630.77. (Tr. at 16:21-17:16; Ex. 2 at 4-5.) It did not withdraw the full amount under the contract of $216,000.00. In total, Creative Fiberglass failed to pay Fundkite $96,369.23. (Tr. at 17:2-4; Ex. 2 at 4.) Fundkite also requested that the Court award it an additional $64,800, representing the Default Fee of 30% of the purchased receipts amount of $216,000.00. (Tr. at 17:17-23; RPA at 12.)

4

Defendant Colombo was present at the inquest and stated that Creative Fiberglass "didn't have the receivables to pay" Plaintiff the total amount due under the RPA. (Tr. at 3:11-4:1.) Colombo further stated that Creative Fiberglass was declared insolvent in 2019, dissolved by the State of Georgia in 2020, and that "[p]ayments [to Plaintiff] were suspended because the company was declared insolvent." (Tr. at 3:11-18; 19:4-6.)[2]

## DISCUSSION

### I. Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Mickalis*, 645 F.3d at 128; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, as may failure to defend at later stages of litigation. Here, Defendant Colombo did not file an answer to the Complaint. While the Court may construe other writings by a *pro se* litigant as sufficient to constitute an answer (*see Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.,* 655 F. Supp. 2d 177, 187 (E.D.N.Y. 2009) (where a party is proceeding *pro se*, the Court must read the *pro se* party's supporting papers liberally)), Colombo stated explicitly that he would

---

[2] After the inquest, Defendant Colombo filed a letter dated May 10, 2021 asking the Court to consider that Defendant Creative Fiberglass paid over $92,000 to Fundkite under the RPA. (Dkt. 66.) Plaintiff filed a response letter on May 28, 2021 stating that it is "inaccurate that Plaintiff did not credit Defendants" since Plaintiff acknowledges that it received $119,630.77 from Defendant Creative Fiberglass under the RPA. (Dkt. 67.)

not answer. (Dkt. 48.) Colombo's participation in several court proceedings does not adequately compensate for his failure to answer or defend.

Moreover, because a corporate entity must appear through counsel and Colombo does not assert that he is a licensed attorney, Defendant Colombo's appearance at proceedings did not constitute a valid appearance on behalf of Creative Fiberglass. It is well settled that a corporation "is not allowed to appear in federal court except by a licensed attorney." *United States v. Twenty Miljam–350 IED Jammers*, 669 F.3d 78, 91 (2d Cir. 2011) (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993)).

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers,* 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citations omitted). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne*, 696 F. Supp. 2d at 208. The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 114, 125-27, 133; (2) Plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages. *See GuideOne*, 696 F. Supp. 2d at 208; *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis*, 645 F.3d at 129.

## II. Jurisdictional and Procedural Requirements

a. <u>Jurisdiction</u>

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). The court may also inquire as to whether it has personal jurisdiction. *See Mickalis*, 645 F.3d at 133; *see also Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

Subject matter jurisdiction is found pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states. Plaintiff is a citizen of New York, Defendant Colombo is a citizen of Georgia, and Defendant Creative Fiberglass is a limited liability company with Colombo as its sole member. ("Pl. Mem.," Dkt. 55-1 at 5.) *See Avant Cap. Partners, LLC v. W108 Dev. LLC,* 387 F. Supp. 3d 320, 322 (S.D.N.Y. 2016) ("A limited liability company takes the citizenship of its members.")

This Court has personal jurisdiction over Defendants because they consented to the RPA under which Plaintiff brings its claims that "[a]ny suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall if [Fundkite] so elects, be instituted in any court sitting in New York State." (RPA at 10.) *See D.H. Blair & Co. v. Gottdiener*, 462 F. 3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.")

b. <u>Service</u>

The Summons and Complaint must be properly served on the defaulting party. *See Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Plaintiff properly served Defendants Creative Fiberglass and Colombo by serving the summons on Colombo, who is designated by law to accept service on behalf of Creative Fiberglass.

(Dkt. 20, 23.) During a status conference held on September 2, 2020, the parties agreed and the Court found that service of process was properly effectuated on Defendant Colombo on behalf of himself and Defendant Creative Fiberglass, LLC. (Dkt. 46.)

      c. <u>Procedural Requirements</u>

Plaintiff has demonstrated that it has taken the required procedural steps to provide proper notice to the defaulting Defendants. Plaintiffs filed the following documents in support of the Motion: Notice of Motion (Dkt. 55); Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment (Dkt. 55-1); Declaration of Oleg Mestechkin in Support of Motion for Default Judgment (Dkt. 55-2); the Clerk's Certificate of Default (Dkt. 53, 54); the Complaint (Dkt. 55-4); a proposed order (Dkt. 55-3); and proof of mailing of the Motion to the defaulting parties (Dkt. 56.) These documents are in compliance with Local Civil Rules 7.1 and 55.2.

**III.    Liability**

When determining liability, the Court accepts as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in favor of Plaintiff. *See Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Plaintiff seeks a default judgment against Defendants Creative Fiberglass and Colombo for breach of contract by failing to abide by the terms of the RPA, including the Guaranty. The elements to establish a *prima facie* claim of breach of contract under New York law are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

The signed RPA constitutes an agreement in which Fundkite agreed to purchase rights to $216,000.00 of the Creative Fiberglass's future receivables in return for a payment of $150,000.00.

(Compl. ¶ 9; RPA at 4.) Plaintiff "performed its obligations under the RPA by remitting the full purchase price of the future receivables (minus certain agreed-upon underwriting and initial fees) to [Creative Fiberglass] on August 30, 2019." (Compl. ¶ 15; Pl. Mem. at 8.) However, Defendants blocked Plaintiff from accessing the Account on December 6, 2019, December 9, 2019, and December 10, 2019, thereby preventing Plaintiff from receiving the full agreed upon amount of Creative Fiberglass's receivables. (Tr. at 17:5-16; Ex. 2 at 4.) Plaintiff also alleges, and the undersigned accepts as true in the context of a default judgment motion, that Creative Fiberglass entered into subsequent agreements to sell its revenues. (Compl. ¶ 18; Pl. Mem. at 9.) These actions by Creative Fiberglass constituted breaches of the RPA. (RPA §§ 2.10, 3.1.)

Defendant Colombo entered into an agreement with Plaintiff, in which he guaranteed Creative Fiberglass's performance under the RPA, including agreeing to pay "any and all amounts owed to Fundkite resulting from [Creative Fiberglass]'s breach of its RPA obligations." (Compl. ¶ 14; Pl. Mem. at 8.) After Fundkite was unable to withdraw the rest of the money Creative Fiberglass owed it, Defendant Colombo failed to pay the remaining funds to Plaintiff. (Compl. ¶¶ 21-22.) Colombo's failure to pay under the Guaranty constituted a breach of the contract.

These breaches resulted in monetary damages to Plaintiff.

Because all the elements of breach of contract have been met, the undersigned respectfully recommends that Defendants Creative Fiberglass and Colombo be found liable for breach of contract.

### IV. Damages

Although a default judgment establishes a defendant's liability, the Court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain. *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp. 2d 1, 3 (S.D.N.Y. 2007).

a. Amount Due Under the Contract

"It is a fundamental principle of contract law that an award of damages should place a plaintiff in the same position as that party would have been if the contract had not been breached." *Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041 (ENV)(SJB), 2020 WL 6581000, at *6 (E.D.N.Y. Oct. 5, 2020) (quoting *Rich-Haven Motor Sales, Inc. v. Nat'l Bank*, 163 A.D.2d 288, 289 (2d Dep't 1990)). Because Plaintiff was entitled to $216,000.00 of purchased receivables, but only received $119,630.77 from Creative Fiberglass, Creative Fiberglass owes Plaintiff $96,369.23 in uncollected receivables.

b. Attorneys' Fees

Plaintiff requests an additional award of $64,800.00, invoking Appendix A to the RPA which states, "In case of default [Creative Fiberglass] would be responsible for the attorney fees in the amount of 30% of the total amount of Purchased Receipts." (RPA at 12.) This provision defines the Default Fee as "attorney fees," and fixes those fees as a percentage of the purchased receipts, *i.e.,* $216,000.00. Plaintiff states that "it is not seeking fees under Section 3.2" of the RPA (Plaintiff Letter dated June 3, 2021 at 1, Dkt. 68), which entitles Fundkite in the event of a default to demand "all fees and charges (including legal fees) due under this Agreement." (Compl. ¶ 13; RPA at 9). Rather, Plaintiff asks the Court to award the Default Fee—a pre-determined mathematical calculation—as encompassing all attorneys' fees and costs. (S*ee* Tr. at 18:10-20.)

A contractual provision which clearly provides for "all reasonable costs," including attorneys' fees and court costs in the event of default, is enforceable. *See LG Cap. Funding, LLC v. Volt Solar Sys., Inc.*, No. 15-CV-1404 (KAM)(VMS), 2016 WL 11447845, at *9 (E.D.N.Y. Aug. 15, 2016), *R&R adopted*, 2016 WL 4718014 (E.D.N.Y. Sept. 9, 2016) (awarding attorneys' fees where the contract evidenced the parties' clear intent to provide for attorneys' fees in the event of a default); *see also Exp. Dev. Canada v. Bonilla*, No. 13-CV-4952 (KBF), 2014 WL 713470, at *3 (S.D.N.Y. Feb. 19, 2014).

10

However, when the parties have contracted to pay a fixed amount in attorneys' fees in the event of default, the court is "not bound by the fixed percentage set forth in the contract, but [has] the inherent authority to determine reasonable attorneys' fees." *Orix Credit All. v. Grace Indus.*, 261 A.D.2d 521, 521 (2d Dep't 1999); *see also Prince v. Schacher*, 125 A.D.3d 626, 628 (2d Dep't 2015) (holding that summary judgment should have been granted for award of counsel fees, but remitting the matter to the trial court to determine reasonable fees notwithstanding contractual amount of 20% of the principal and interest due); *Vigo v. 501 Second Street Holding Corp.*, 121 A.D.3d 778, 779-780 (2d Dep't 2014) ("An award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered.")

The Second Circuit has considered New York cases rejecting "'mechanical applications'" of liquidated fee awards setting attorneys' fees as a percentage of debt or damages as "reaffirm[ing] the rule that only reasonable fees are compensable." *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 20 (2d Cir. 1992) (citing *First Nat. Bank of E. Islip v. Brower*, 42 N.Y.2d 471, 472-75 (N.Y. 1977)). Thus, "[c]ourts in the Second Circuit have followed the New York rule that a fee-recovery provision setting attorneys' fees as a fixed-percentage of the debt or damages must be reasonable." *Marjan Int'l Corp. v. Azarian*, No. 97-CV-8598 (JSM), 2000 WL 744120, at *2 (S.D.N.Y. June 9, 2000) (denying plaintiff's motion for summary judgment with respect to application for attorneys' fees equal to 25% of amount recovered from defendants); *see also Korea First Bank v. Lee*, 14 F.Supp.2d 530, 533 (S.D.N.Y. 1998) (vacating award of attorneys' fees pursuant to a 15% fee provision because "the plaintiff is entitled to recover no more than it agreed to pay its counsel and...the fee in any case must be reasonable").

Therefore, notwithstanding the Default Fee provision of the RPA, which seeks to supplant the Court's assessment of reasonable attorneys' fees and costs by substituting an automatic amount of 30% of the purchased receipts for actual fees, the Court must still assess whether the requested

11

amount of $64,800.00 is reasonable. The "court retains discretion to determine, under all the circumstances, what constitutes a 'reasonable' [attorneys'] fee." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998). "[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).

Exhibit 2, which Plaintiff entered in evidence at the inquest, contains a "Legal Fees Ledger" showing $12,917.75 in legal fees from March 17, 2020 to April 7, 2021. (Ex. 2 at 6.) This document does not contain contemporaneous time records or attorney qualifications, and is insufficient for the Court to determine whether the requested amount is reasonable. It also did not cover all legal work performed in this case, since it does not include the work done in connection with the inquest held subsequently on April 22, 2021. Therefore, the Court entered an order for Plaintiff "to submit complete records no later than June 4, 2021 to support 'all fees and charges (including legal fees)' as set forth in Section 3.2 of the RPA." (Order dated June 1, 2021.) Instead of doing so, Plaintiff filed a letter stating, "because it is not seeking fees under Section 3.2, there are no documents to support this request that Plaintiff did not make." (Dkt. 68 at 1.)

Because Plaintiff has declined to submit any contemporaneous time records to support the duration and nature of legal work done by Plaintiff's counsel in this case, the Court is unable to assess the reasonableness of the $64,800.00 fee requested by Plaintiff.

Accordingly, the undersigned respectfully recommends that the Motion be granted as to the uncollected receivables in the amount of $96,369.23, but denied as to the requested amount of $64,800.00 or any other attorneys' fees based on the current record. However, the undersigned respectfully recommends that Plaintiff be granted another opportunity to submit a fees application with supporting documentation.

c. Prejudgment Interest

Under New York law, prejudgment interest is available in actions for breach of contract. *See, e.g.*, *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998); N.Y. C.P.L.R. § 5001(a). "Interest shall be computed from the earliest ascertainable date the cause of action existed…." N.Y. C.P.L.R. § 5001(b). Contract claims accrue at the time of the breach. *Cont'l Cas. Co. v. Contest Promotions NY, LLC,* No. 15-CV-501 (MKB), 2016 WL 1255726, at *7 (E.D.N.Y. Mar. 28, 2016) (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)). The statutory interest rate for prejudgment interest in New York is nine percent per year. N.Y. C.P.L.R. § 5004.

Plaintiff seeks prejudgment interest from December 12, 2019, the date on which they assert that their breach of contract claim arose.[3] (Compl. ¶¶ 16, 17; Pl. Mem. at 9-10.) Applying the statutory interest rate of nine percent per annum to the amount of $96,369.23 that Plaintiff did not receive from Creative Fiberglass under the RPA results in a daily interest amount of $23.76. The undersigned therefore respectfully recommends that Plaintiff be granted prejudgment interest at a rate of $23.76 per day from December 12, 2019 to the entry of judgment.

d. Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a). In federal diversity actions, federal courts must apply the federal rate. *Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043 (NGG)(SMG), 2019 WL 3719461, at *4 (E.D.N.Y. July 11, 2019), *R&R adopted,* 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019) (quoting *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013)). Accordingly, the undersigned respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

---

[3] Because this date is after December 6, 2019, December 9, 2019, and December 10, 2019, when Fundkite was blocked from accessing the Account (Ex. 2 at 4), the Court accepts it as the date on which interest begins to accrue.

13

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Motion be GRANTED, that Defendants Creative Fiberglass and Colombo be found jointly and severally liable for breach of contract, and that judgment be entered against both defendants awarding Plaintiff (1) $96,369.23; (2) prejudgment interest of $23.76 per day from December 12, 2019 until the entry of judgment; and (3) post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  The undersigned also respectfully recommends that Plaintiff be granted leave to submit an application for reasonable attorneys' fees and costs.

Plaintiff is directed to serve this Report and Recommendation on Defendants Creative Fiberglass and Colombo forthwith and file proof of service on the docket by June 17, 2021.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         June 13, 2021